IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| JOYCE A. SUTTON-REED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:15cv764–HEH |
| | ) | |
| COMMONWEALTH OF VIRGINIA, | ) | |
| VIRGINIA DEPARTMENT OF | ) | |
| ALCOHOL BEVERAGE CONTROL, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION
### (Motion to Dismiss)

THIS MATTER is before the Court on Defendant Commonwealth of Virginia, Department of Alcohol Beverage Control's ("Defendant" or "ABC") Motion to Dismiss, filed on January 7, 2016 (ECF No. 3). Defendant seeks to dismiss Plaintiff Joyce Sutton-Reed's ("Plaintiff") remaining claims pursuant to Title VII of the Civil Rights Act of 1964.[1] Defendant argues that this Court lacks subject matter jurisdiction and that Plaintiff has failed to state a claim. For the reasons set forth below, the Court will grant in part and deny in part Defendant's Motion.

### I.    Background

On a motion to dismiss, the Court takes the well-pleaded allegations as true and views them in light most favorable to the plaintiff. *T.G. Slater & Son, Inc. v. Donald P.*

---

[1] On March 9, 2016, this Court granted Plaintiff's Voluntary Motion to Dismiss her claims pursuant to the Virginia Human Rights Act and 42 U.S.C. § 1981, as well as for Intentional Infliction of Emotional Distress. (Order, ECF No. 13.) Accordingly, only Plaintiff's Title VII claims remain.

*and Patricia Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004). Accordingly, the Court finds as follows:

Plaintiff, an African-American female, worked for Defendant between approximately August 31, 1985, until on or about April 1, 2014. (Compl. ¶ 3, ECF No. 1.) Defendant hired Plaintiff in 1985 as a Special Agent. (*Id.* ¶ 4.) Her duties included background investigations, undercover work, dissemination of intelligence, arrests, and testifying in court. (*Id.*) During her tenure, Plaintiff filed at least three other charges with the Equal Opportunity Employment Commission ("EEOC") against Defendant for sexual and racial discrimination, one of which resulted in a civil action in this Court. (*Id.* ¶ 8.)[2]

On May 13, 2013, while driving a state-owned vehicle, Plaintiff received a telephone call that her mother was having a heart attack and emergency personnel were responding to her parents' residence. (*Id.* ¶ 10.) Because the next highway exit led to her parents' house and because it appeared to be an emergency situation, Plaintiff "slightly deviated from her normal route to check on her mother." (*Id.*) Upon arrival, Plaintiff determined that she did not need to remain, and she left after approximately five minutes to proceed directly to work. (*Id.*)

According to Plaintiff, ABC policy allows for personal use of a state vehicle during bona fide emergencies. (*Id.*) Nevertheless, Plaintiff received a Group II infraction for "improper use of state property" and a three-day suspension for her actions on May

---

[2] Plaintiff states in her Complaint that she had filed "fourteen other EEOC complaints against ABC." (Compl. ¶ 8.) In her responsive pleading, however, she states that fourteen is erroneous and she had only brought three previous EEOC complaints against Defendant. (Pl.'s Br. Opp'n Def's Mot. Dismiss 10 n.3, ECF No. 7.)

13, 2013. (*Id.*) According to Plaintiff, Defendant routinely either ignored or handed down minimal punishment for these sorts of infractions when committed by her white and male colleagues. (*Id.* ¶ 11.)

Upon receiving her Group II infraction, Plaintiff also received a charge for insubordination. (*Id.* ¶ 13.) This charge stemmed from Plaintiff allegedly running her sister's boyfriend's name through a Virginia State Police database. (*Id.* ¶¶ 13, 15.) According to Plaintiff, a white female employee ultimately admitted to the wrongdoing. (*Id.* ¶ 16.) Although the white female employee only received a counseling letter, Plaintiff was docked a month's pay after being accused of that conduct. (*Id.*)

As explained in her Complaint, Plaintiff also received notice that she was being investigated for improper conduct related to a banquet license event in Portsmouth. (*Id.*) Plaintiff claims that a white female colleague assigned Plaintiff to investigate a banquet application, which she determined to have been wrongfully submitted. (*Id.*) Despite this determination, an African-American male colleague directed Plaintiff to grant the license anyway. (*Id.*) Upon working an investigation at the banquet, ABC and the Portsmouth Sheriff's Office shut down the banquet for licensing violations. (*Id.*) The applicant's wife then filed a complaint against Plaintiff. (*Id.*) Plaintiff claims that although both her white and male colleagues participated in the initial investigation, their involvement was concealed. (*Id.*)

Plaintiff contends that as a result of these events, she determined the harassment and retaliation would not end. (*Id.* ¶ 26.) On March 31, 2014, Plaintiff submitted her retirement letter to her supervisor. (*Id.*) The very next day, however, Plaintiff attempted

to rescind her retirement. (*Id.* ¶ 27.) Plaintiff hand-delivered a letter to Human

Resources "expressly rescinding her retirement," and the Benefits Administrator told

Plaintiff that rescinding her retirement would not be a problem because Plaintiff's

paperwork had not yet been fully processed. (*Id.* ¶¶ 27–28.) According to Plaintiff,

ABC's standard practice allowed for recession of retirement. (*Id.* ¶ 27.) Although she

attempted to rescind her retirement, Defendant refused to allow her to do so. (*Id.* ¶ 28.)

Throughout her Complaint, Plaintiff also references other instances of allegedly

discriminatory conduct in the form of specious investigations and unprofessional

comments from colleagues. For example, Plaintiff alleges that Defendant reprimanded

her for filing a legitimate complaint about mold in the office. (*Id.* ¶ 12.) Plaintiff also

claims that during her employment, she was "constantly investigated" and "had at least

twelve investigations brought against her by ABC." (*Id.* ¶ 21.)

Plaintiff also pleads that she filed a grievance against ASAC Klepper, a white

female, for unprofessional conduct for discussing Plaintiff's personal and professional

life in the reception area of the front office. (*Id.* ¶ 18.) She alleges others made

unprofessional comments to her both during meetings in front of other ABC employees

and during private conversations. (*Id.* ¶¶ 22–23.) Plaintiff also contends that during her

employment with Defendant, other African-American women were treated differently

and unfairly. (*Id.* ¶ 25.)

On March 31, 2014, Plaintiff filed a charge of discrimination with the EEOC. (*Id.*

¶ 6.) On September 17, 2015, the EEOC issued to Plaintiff a notice of her right to sue on

that charge. (*Id.*) Plaintiff then timely filed suit in this Court. Defendant now moves to

dismiss the remaining claims pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

## II.     Standard of Review

A motion made pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the Court's jurisdiction over the subject matter of the complaint. In the context of a Title VII claim, failure to exhaust administrative remedies deprives a federal court of subject matter jurisdiction. *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009).

The well-pleaded facts contained within the complaint both inform and constrain this Court's review of a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6). The Court must endeavor to determine the sufficiency of the complaint, "not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, the Court accepts plaintiff's well-pleaded allegations as true and views the complaint in the light most favorable to the plaintiff. *T.G. Slater & Son, Inc.*, 385 F.3d at 841. The Court, however, "need not accept the legal conclusions drawn from the facts," nor must the Court "accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

To survive Rule 12(b)(6) scrutiny, a plaintiff must provide more than merely "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citations omitted). Instead, a

plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," stating a claim that is "plausible on its face," rather than merely "conceivable." *Id.* at 555, 570 (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III. Analysis

Defendant lodges two challenges to Plaintiff's Complaint. First, Defendant argues this Court lacks subject matter jurisdiction over some of Plaintiff's allegations and moves to dismiss those portions of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). (Br. Supp. Def.'s Mot. Dismiss Pl.'s Compl. ("Def.'s Br.") 9–10, ECF No. 4.) Second, Defendant contends Plaintiff fails to state a claim for the remainder of her allegations and seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). (*Id.* at 11–22.) Plaintiff counters that this Court properly exercises jurisdiction over all claims and that she has appropriately pleaded her case. (Pl.'s Br. Opp'n Def.'s Mot. Dismiss ("Pl.'s Br.") 6–13, ECF No. 7.) The Court addresses each in turn.

Defendant first moves to dismiss certain aspects of Plaintiff's Complaint for lack of subject matter jurisdiction, contending Plaintiff's Complaint contains allegations outside of the scope of the EEOC charge. (Def.'s Br. 9–10.) Specifically, Defendant seeks to dismiss the claims related to Plaintiff's contentions about mold, unprofessional commentary by colleagues, and general treatment of African-American females during Plaintiff's employment. (*Id.* at 10.) Plaintiff counters that she did exhaust all of her

administrative remedies because she presented these allegations to Defendant in a
mediation brief before the EEOC. (Pl.'s Br. 6–7.)

Before a Plaintiff may file suit pursuant to Title VII, she must file an
administrative charge with the EEOC. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th
Cir. 2005). "This charge frames the scope of future litigation." *Id.* A Plaintiff may
pursue "[o]nly those discrimination claims stated in the initial charge, those reasonably
related to the original complaint, and those developed by reasonable investigation of the
original complaint" during a subsequent lawsuit in federal court. *Id.* (quoting *Evans v.
Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)). "[A] plaintiff fails to
exhaust h[er] administrative remedies where . . . h[er] administrative charge[]
reference[s] different time frames, actors, and discriminatory conduct than the central
factual allegations in h[er] formal suit." *Id.*

In its brief in support of its motion to dismiss, Defendant attached Plaintiff's
EEOC charge ("Current Charge"), written notice of Plaintiff's Group II infraction, and
two counseling letters to other Special Agents. Defendant attaches the Current Charge
because Plaintiff failed to provide it in her initial filings. Further, Defendant utilizes the
Current Charge to support its argument that Plaintiff never presented certain arguments to
the EEOC, and, therefore, this Court lacks subject matter over those claims pursuant to
Federal Rule of Civil Procedure 12(b)(1). (Def.'s Br. 9–10.) Plaintiff responds that this
Court may not rely on extrinsic evidence in ruling on a Rule 12(b)(6) motion to dismiss.
(Pl.'s Br. 4–5.)

As a general rule, courts should not rely on extrinsic evidence in ruling on a motion to dismiss. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). However, if a plaintiff explicitly relies on a document in her complaint and that document is integral to the complaint, a court may consider the document attached to a motion to dismiss so long as the plaintiff does not challenge its authenticity. *Id.* (citing *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).

As it relates to the Current Charge, Plaintiff explicitly pleads in her Complaint that she has exhausted her administrative remedies for allegations contained within EEOC charge number 437-2014. (Compl. ¶ 6.) The charge provided by Defendant identifies the EECO charge number as 437-2014-00490 and identifies the complainant as Mrs. Joyce A. Sutton-Reed. (Def.'s Br., Ex. A, Current Charge, ECF No. 4-1.) Although Plaintiff challenges this Court's use of the Current Charge, Plaintiff does not challenge its authenticity.

Plaintiff directs her argument at Defendant's apparent failure to assert that the Current Charge is integral to Plaintiff's Complaint. (Pl.'s Br. 4–5.) Moreover, Plaintiff argues that a document is only integral when the claims "arise" from the document. (*Id.* at 5.) She asserts that her claims do not arise from the documents attached to Defendant's brief, and, therefore, this Court may not rely on them without converting the instant motion to one for summary judgment. (*Id.* at 5–6.) Defendant responds that because this Court's jurisdiction depends on the allegations contained in the Current Charge, "it is hard to imagine a more integral document." (Rebuttal Br. Supp. Def.'s Mot. Dismiss Pl.'s Compl. ("Def.'s Reply") 3, ECF No. 10.)

The Court agrees with Defendant. An EEOC charge constrains the scope of litigation in federal court. *See Chacko*, 429 F.3d at 506. The document speaks to this Court's power to hear Plaintiff's claims. Accordingly, the Current Charge is integral to Plaintiff's Complaint. The Court, therefore, may rely on the Current Charge in assessing Defendant's Motion to Dismiss without converting it to one for summary judgment. *See Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d 607, 618 n.3 (E.D. Va. 2011).[3]

In her Current Charge, Plaintiff's central factual allegations of discrimination flow from discrete instances of alleged discrimination. First, she charges that events surrounding the use of a state vehicle for personal reasons constituted discrimination because male and white employees had used state vehicles for personal use, but those individuals had "not been treated as harshly as [Plaintiff]" during the disciplinary process. (Current Charge.) Second, albeit less clear, Plaintiff claims discrimination in relation to an investigation for improper conduct at a banquet license event. (*Id.*) Additionally, Plaintiff states the alleged discrimination took place between February 19, 2014, and February 28, 2014. (*Id.*)

Absent from Plaintiff's Current Charge is mention of a reprimand for filing a legitimate complaint about mold, of any unprofessional conduct for discussing Plaintiff's personal or professional life, or of the general treatment of African-American females

---

[3]   As for the written notice of the Group II infraction and counseling letters to other Special Agents, Defendant provides those documents to rebut factual claims in Plaintiff's Complaint. (Def.'s Reply 3–4.) Relying on those documents would require this Court to convert Defendant's Motion to Dismiss to one for summary judgment. Fed. R. Civ. P. 12(d). The Court may not do so unless the parties have been afforded "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* At this early juncture in the litigation, the Court declines to utilize those documents in assessing Plaintiff's Motion to Dismiss and will not convert the motion to one for summary judgment.

during her time as Defendant's employee. To the extent that any event arose during the nine-day period alleged in the Current Charge, the Complaint references different conduct and different actors than the Current Charge.

Plaintiff suggests that she mentioned these instances in a mediation brief to Defendant before the EEOC. (Pl.'s Br. 7.) Although Plaintiff may have mentioned these instances in a mediation brief to Defendant, Plaintiff pleads no facts in the Complaint placing those allegations within the ambit of the Current Charge. Even construing Plaintiff's administrative charge and Complaint liberally, the Court cannot say that these allegedly related claims reasonably relate to the specific instances of alleged discrimination Plaintiff references in her Current Charge. Accordingly, the Court will dismiss any claims related to her complaint about mold, her accusations of unprofessional conduct, and the general treatment of African-American women during her employment for lack of subject matter jurisdiction. [4]

Next, Defendant moves to dismiss Plaintiff's remaining claims pursuant to Rule 12(b)(6) for failure to state a claim. (Def.'s Br. 11–22.) Plaintiff responds that she has stated a claim for Title VII violations. (Pl.'s Br. 7–13.)

---

[4]    The Court notes that even if this Court had subject matter jurisdiction, Plaintiff may face a difficult road in pursuing some of these purported acts of discrimination. To the extent Plaintiff seeks redress for coworkers simply discussing her, Title VII does not create a "general civility code." *Onacle v. Sundowner Offshore Svcs., Inc.*, 523 U.S. 75, 81 (1998). While a workplace may involve employee interactions that assume "a coarse or boorish tone," there is a line between harassment and what may be considered merely rude behavior. *Ziskie v. Mineta*, 547 F.3d 220, 228 (4th Cir. 2008). While no one may condone this type of behavior, "[w]ere such things the stuff of lawsuits, we would be litigating past sundown in ever so many circumstances." *Id.*

In Count I, Plaintiff pursues damages for intentional race and sex discrimination, alleging that Defendant pursued infractions against Plaintiff for trivial or minor incidents that Defendant would overlook when done by either Plaintiff's white or male colleagues, presumably the infractions contained within her Current Charge. (Compl. ¶ 33.) Plaintiff also alleges that Defendant investigated Plaintiff more frequently than her white or male colleagues because of Plaintiff's race and gender. (*Id.*) Finally, Plaintiff alleges discrimination based upon Defendant's failure to accept the rescission of her resignation constituted discrimination. (*Id.*)

Absent direct evidence, a prima facie case for discrimination pursuant to Title VII requires a showing that plaintiff: (1) is a member of a protected class, (2) satisfactorily performed her job, (3) suffered an adverse employment action, and (4) was treated differently than other similarly situated employees. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)). Here, Defendant focuses its argument on Plaintiff's failure to allege the third and fourth elements.

Plaintiff sufficiently pleads she suffered an adverse employment action as it relates to the improper use of a state vehicle. Plaintiff pleads that she was suspended following that action. (Compl. ¶ 10.) In addition, Plaintiff pleads that she suffered docked pay following the accusation that she improperly ran her sister's boyfriend's name through the Virginia State Police database. (*Id.* ¶ 16.)

Plaintiff also pleads that she was treated differently than similarly situated employees. Plaintiff points to white and male colleagues—specifically, Judy Carmen and

Craig Carmen—who only received counseling letters for improper vehicle usage violations. (Compl. ¶ 11.) According to Plaintiff, these counseling letters merely go into an individual's personnel file. (*Id.*) Additionally, Plaintiff pleads that although Plaintiff was docked pay upon being accused of improperly running her sister's boyfriend's name through the Virginia State Police database, the white colleague who ultimately admitted to the running the name only received a counseling letter. (*Id.* ¶ 16.) Accordingly, at this stage and giving all reasonable inferences to Plaintiff, she has stated a prima facie case of discrimination under Title VII related to the improper use of a state vehicle and the "insubordination" charge.

As for Plaintiff's claims related to being investigated more frequently than white or male colleagues and for failing to accept the rescission of her retirement, Plaintiff fails to point to any specific, similarly situated employees. Her pleadings as to these claims amount to nothing more than a recitation of the elements of the cause of action and fail to pass Rule 12(b)(6) muster. *See Twombly*, 550 U.S. at 555. The Court will dismiss those claims.

Plaintiff also pursues a claim of hostile work environment in Count I. (Compl. ¶ 34.) To state a claim for hostile work environment pursuant to Title VII, a plaintiff must show the offending conduct was: (1) unwelcome, (2) based upon her race and sex, (3) sufficiently severe or pervasive either to alter conditions of employment or create an abusive working environment, and (4) imputable to her employer. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 331 (4th Cir. 2011). Defendant challenges Plaintiff's pleading as to the third element.

In showing that conduct rises to sufficient severity or pervasiveness to create an abusive working environment, a Plaintiff must demonstrate that the environment is one "that a reasonable person would find hostile or abusive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Whether an environment constitutes a hostile or abusive one depends on the totality of the circumstances. *See id.* at 23. These circumstances "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

Plaintiff has failed to plead facts tending to show that she suffered from a hostile work environment. In her Current Charge, she details certain, specific instances of alleged discrimination. She also pleads more generally that she was investigated twelve times over her twenty-nine year employment with Defendant, but she admits that most investigations exonerated her. (Compl. ¶ 21.) Although she makes the bald assertion that these investigations were made in bad faith, she fails to plead any facts warranting such an inference. Further, Plaintiff does not plead any physically threatening or especially humiliating comments occurred. Accordingly, the Court will dismiss her hostile work environment claim.

In Count II, Plaintiff alleges constructive discharge. Plaintiff contends that the hostile work environment and racial and sexual harassment "forced" Plaintiff to retire. (Compl. ¶ 40.) Plaintiff avers that no reasonable person in a similar situation would have any other choice but to separate from his or her employment. (*Id.* ¶ 41.)

13

To show constructive discharge, a plaintiff must allege that racial bias motivated the employer's deliberate actions and that those actions resulted in objectively intolerable working conditions. *See Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 187 (4th Cir. 2004). To satisfy the objectively intolerable requirement, a plaintiff must show more than dissatisfaction with assignments, a feeling of unfair criticism, or simply difficult or unpleasant working conditions. *Id.* The working conditions must be "so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004). Defendant avers that Plaintiff fails to show that her working conditions were objectively intolerable. (Def.'s Mem. 17–18.)

Plaintiff fails to plead sufficient facts showing that her conditions were so intolerable that a reasonable person in her position would have felt compelled to resign. In fact, her Complaint belies that notion in that her own subjective belief shows the working conditions were not so intolerable. Plaintiff pleads that she decided the harassment and retaliation would not end, and on March 31, 2014, she submitted her retirement letter. (Compl. ¶ 26.) "[W]ithin a day, [Plaintiff] decided to rescind her retirement . . . ." (*Id.* ¶ 27.) Plaintiff hand-delivered a letter "expressly rescinding her retirement" to Human Resources on April 1, 2014. (*Id.*)

As noted above, at this stage, the Court "need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd.* 591 F.3d at 253. Here, Plaintiff claims she determined the harassment and retaliation would not end and submitted her retirement letter on March 31, 2014; however, the very next day, Plaintiff attempted to rescind her retirement and return to work. The nearly immediate

14

about-face signals to the Court that not even Plaintiff subjectively believed that her work environment was "so intolerable" that she could no longer work for Defendant. Her own actions repudiate any notion that a reasonable person in Plaintiff's position would have felt compelled to resign. Accordingly, Plaintiff has failed to state a claim for constructive discharge, and that claim will be dismissed.

Finally, in Count III, Plaintiff pleads that Defendant retaliated against her for her prior complaints by creating a hostile work environment, by issuing her a Group II infraction for improper use of a state vehicle, and by refusing to accept Plaintiff's rescission of her retirement. (Compl. ¶ 46–47.) To the extent Plaintiff seeks retaliation for the creation of a hostile work environment, the Court has already addressed that above. Plaintiff has failed to plead sufficient facts to support a hostile work environment claim.

To prevail on a retaliation claim, Plaintiff must show that she: (1) engaged in protected activity, (2) suffered an adverse employment action, and (3) a casual connection exists between the protected activity and adverse action. *Boyer-Liberto v. Fontainebleu Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (en banc). Here, Defendant argues Plaintiff failed to plead the second and third elements of retaliation. (Def.'s Br. 19–22.)

Plaintiff avers her previous lawsuit and EEOC charges amount to protected activity. (Compl. ¶ 46.) Plaintiff pleaded that she suffered suspension and docked pay. (*Id.* ¶¶ 10, 16.) Further, Defendant failed to allow Plaintiff to rescind her retirement, which was apparently against Defendant's general policy, and this resulted in what she

contends is a permanent change in her employment status. Plaintiff, therefore, has sufficiently pleaded an adverse employment action.

Defendant contends the lapse of time between the lawsuits and previous EEOC charges—the most recent before the Current Charge occurred in 2009—cuts against an inference that any adverse employment action in 2014 was related to her protected activity. (Def.'s Br. 21.) This lapse in time, if ultimately and factually proven, may be fatal to Plaintiff's claim. On the pleadings, however, the Court will find that Plaintiff has minimally met her burden and has stated a claim for retaliation pursuant to Title VII.

## IV.   Conclusion

For the reasons set forth above, the Court will grant Defendant's Motion as it relates to subject matter jurisdiction. The Court will also grant Defendant's Motion for failure to state a claim on Plaintiff's allegations of frequent investigations and hostile work environment in Count I, for constructive discharge in Count II, and for hostile work environment in Count III. The Court will deny the remainder of Defendant's Motion.

In her responsive pleading, Plaintiff asks this Court to give her leave to file an amended complaint should the Court grant Defendant's Motion. (Pl.'s Br. 13.) Defendant responds that in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules, Plaintiff should make a separate motion for leave to amend, stating with particularity the grounds for amendment and providing a proposed amended complaint. (Def.'s Reply 16–17.) In doing so, Defendant believes this Court could assess the proposed amended complaint to determine any grounds for denial of amendment—such as futility—exist. (*Id.* at 17.) Defendant recognizes that this Court

16

should generally grant amendment freely but believes that on this record, the Court lacks sufficient information to weigh the merits of her motion. (*Id.*)

Given that this Memorandum Opinion details the pleading deficiencies contained in Plaintiff's Complaint, this Court will allow Plaintiff to file a motion to file an amended complaint. Plaintiff should attach to that motion her proposed amended complaint. Upon review of the amended complaint, the Court will decide whether it merits filing.

An appropriate Order shall issue.

It is so ORDERED.

/s/

Henry E. Hudson
United States District Judge

Date: March 30, 2016
Richmond, Virginia